Attorney: NICHOLAS MARTINO, JR.
Attorney for Plaintiffs
7448 Amboy Road
Staten Island, New York 10307
(718) 605-7360

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---

NICKOLAS CHRISTIE and DONNA CHRISTIE,

Plaintiff(s),

-against-

HYATT CORPORATION and its Subsidiaries and Affiliates, known under its Trademark, WORLD OF HYATT; HYATT HOTELS CORPORATION and its Subsidiaries and Affiliates, known under its Trademark, WORLD OF HYATT; HYATT FRANCHISING LATIN AMERICA, LLC, and its Subsidiaries and Affiliates; THE CORYN GROUP II, LLC, its Subsidiaries and Affiliates, known under its Trademark, AMR COLLECTION; APPLE LEISURE GROUP and its Subsidiaries and Affiliates; ALG VACATIONS CORPORATION and its Subsidiaries and Affiliates; CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., and its Subsidiaries and Affiliates d/b/a APPLE LEISURE GROUP; CASABLANCA GLOBAL HOLDINGS, L.P., and its Subsidiaries and Affiliates d/b/a APPLE LEISURE GROUP; AMResorts, L.P., and its Subsidiaries and Affiliates; DREAMS MACAO BEACH PUNTA CANA; "JOHN DOES 1 - 10," fictitious names intended to represent individual employees and/or agents of the defendants named herein; and, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident,

Defendant(s).

---

COMPLAINT, DEMAND FOR JURY TRIAL

Civil Action No. 1:24-cv-04442

Plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, by their attorney, Nicholas Martino, Jr., do hereby complain of the defendants herein and allege the following upon information and belief and at all times herein relevant.

**VENUE AND JURISDICTION**

1. This action is brought pursuant to 28 U.S.C. Section 1345 and 28 U.S.C. Section 1391, as well as under Illinois State tort law.

2. Jurisdiction is founded in the District Court pursuant to 28 U.S.C. Section 1332 (Diversity of Citizenship); and, this is a Civil action arising under the laws of the State of Illinois.

3. Venue is properly laid in this district under 28 U.S.C. Section 1391(b)(3), as the defendants maintain their principal place of business in Chicago and the State of Illinois.

**PARTIES**

4. Plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, husband and wife, were and still are residents of Richmond County, City and State of New York.

5. That on or before June 9, 2022, defendant, HYATT CORPORATION, known under its Trademark, WORLD OF HYATT, (hereinafter referred to as "HYATT CORPORATION"), whose headquarters is located at 150 N. Riverside Plaza, Chicago, Illinois 60606, was and still is a foreign corporation duly

organized under and existing by virtue of the laws of the State of Delaware.

6. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, known under its Trademark, WORLD OF HYATT, (hereinafter referred to as "HYATT HOTELS CORPORATION"), whose headquarters is located at 150 N. Riverside Plaza, Chicago, Illinois 60606, was and still is a foreign corporation duly organized under and existing by virtue of the laws of the State of Delaware.

7. That on or before June 9, 2022, defendant, HYATT FRANCHISING LATIN AMERICA, LLC, (hereinafter referred to as "HYATT LATIN AMERICA"), whose headquarters is located at 150 N. Riverside Plaza, Chicago, Illinois 60606, was and still is a foreign corporation duly organized under and existing by virtue of the laws of the State of Delaware.

8. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, known under its Trademark, AMR COLLECTION, (hereinafter referred to as "AMR COLLECTION"), whose registered agent is located at 850 New Burton Road, Suite 201, Dover, Delaware 19904, was and still is a foreign corporation duly organized under and existing by virtue of the laws of the State of Delaware.

9. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, whose headquarters is located at 2495 White Horse Road, Berwyn, Pennsylvania 19312, was and still is a foreign

corporation duly organized under and existing by virtue of the laws of the State of Pennsylvania.

10. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, whose headquarters is located at 2495 White Horse Road, Berwyn, Pennsylvania 19312, was and still is a foreign corporation duly organized under and existing by virtue of the laws of the State of Pennsylvania.

11. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., d/b/a APPLE LEISURE GROUP, whose headquarters is located at 2495 White Horse Road, Berwyn, Pennsylvania 19312, was and still is a foreign corporation duly organized under and existing by virtue of the laws of the State of Pennsylvania.

12. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., d/b/a APPLE LEISURE GROUP, whose headquarters is located at 2495 White Horse Road, Berwyn, Pennsylvania 19312, was and still is a foreign corporation duly organized under and existing by virtue of the laws of the State of Pennsylvania.

13. That on or before June 9, 2022, defendant, AMResorts, L.P., whose registered agent is located at 600 North 2nd Street, Harrisburg, Pennsylvania 17005, was and still is a foreign limited partnership duly organized under and existing by virtue of the laws of the State of Pennsylvania.

14. That on or before June 9, 2022, defendant, DREAMS MACAO BEACH PUNTA CANA, (hereinafter referred to as "DREAMS"), is located at Playa Macao, Macao, La Altagracia Province Republica Dominicana 23000, was and still is a luxury resort in the Dominican Republic.

15. That on or before June 9, 2022, defendants, "JOHN DOES 1 - 10," fictitious names intended to represent individual employees and/or agents of the defendants named herein, were employees, agents and/or servants of the defendants herein.

16. That on or before June 9, 2022, defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, were owners, operators, managers, supervisors and/or security for defendant, DREAMS MACAO BEACH PUNTA CANA.

17. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, had substantial contacts with the State of Illinois.

18. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, regularly solicited business from individuals within the State of Illinois.

19. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, advertised in the State of Illinois.

20. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, derived substantial revenue from the State of Illinois.

21. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, owned or leased property in the State of Illinois.

22. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, had employees who worked in the State of Illinois.

23. That on or before June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

24. That on or before June 9, 2022, defendant, HYATT CORPORATION, shared common ownership, directly or indirectly, or through their subsidiaries and affiliates, with each of the co-defendants herein.

25. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, had substantial contacts with the State of Illinois.

26. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, regularly solicited business from individuals within the State of Illinois.

27. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, advertised in the State of Illinois.

28. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, derived substantial revenue from the State of Illinois.

29. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, owned or leased property in the State of Illinois.

30. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, had employees who worked in the State of Illinois.

31. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through their subsidiaries and affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

32. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, shared common ownership, directly or indirectly, or through their subsidiaries and affiliates, with each of the co-defendants herein.

33. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

34. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

35. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

36. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent

corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

37. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

38. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

39. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

40. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, shared common ownership, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

41. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

42. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

43. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

44. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

45. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

46. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

47. That on or before June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, provided marketing

and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

48. That on or before June 9, 2022, defendant, AMR COLLECTION, shared common ownership, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

49. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

50. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

51. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

52. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

53. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent

corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

54. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

55. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

56. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, shared common ownership, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

57. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

58. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

59. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

60. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

61. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

62. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

63. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

64. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, shared common ownership, directly or

indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

65. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

66. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

67. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

68. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

69. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

70. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

71. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates and/or parent corporation, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

72. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., shared common ownership, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

73. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

74. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

75. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

76. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

77. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

78. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

79. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

80. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., shared common ownership, directly or

indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

81. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, had substantial contacts with the State of Illinois.

82. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, regularly solicited business from individuals within the State of Illinois.

83. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, advertised in the State of Illinois.

84. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, derived substantial revenue from the State of Illinois.

85. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, owned or leased property in the State of Illinois.

86. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation,

subsidiaries and/or affiliates, had employees who worked in the State of Illinois.

87. That on or before June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, provided marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

88. That on or before June 9, 2022, defendant, AMResorts, L.P., shared common ownership, directly or indirectly, or through their parent corporation, subsidiaries and/or affiliates, with each of the co-defendants herein.

89. That on or before June 9, 2022, defendant, DREAMS, directly or indirectly, or through their parent corporation, had substantial contacts with the State of Illinois.

90. That on or before June 9, 2022, defendant, DREAMS, directly or indirectly, or through their parent corporation, regularly solicited business from individuals within the State of Illinois.

91. That on or before June 9, 2022, defendant, DREAMS, directly or indirectly, or through their parent corporation, advertised in the State of Illinois.

92. That on or before June 9, 2022, defendant, DREAMS, directly or indirectly, or through their parent corporation, derived substantial revenue from the State of Illinois.

93. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, had substantial contacts with the State of Illinois.

94. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, regularly solicited business from individuals within the State of Illinois.

95. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, advertised in the State of Illinois.

96. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, derived substantial revenue from the State of Illinois.

97. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, owned or leased property in the State of Illinois.

98. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, had employees who worked in the State of Illinois.

99. That on or before June 9, 2022, defendant, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, provided, marketing and management services; advertising; booking and reservations; and, transportation services within the State of Illinois.

100. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, HYATT HOTELS CORPORATION.

101. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, HYATT LATIN AMERICA.

102. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, THE CORYN GROUP II, LLC, including its Trademark, AMR COLLECTION.

103. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, APPLE LEISURE GROUP.

104. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

105. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., including its Trademark, APPLE LEISURE GROUP.

106. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, CASABLANCA GLOBAL HOLDINGS, L.P., including its Trademark, APPLE LEISURE GROUP.

107. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, AMResorts, L.P.

108. That on or about June 9, 2022, defendant, HYATT CORPORATION, directly or indirectly, owned defendant, DREAMS.

109. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, HYATT CORPORATION.

110. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, HYATT LATIN AMERICA.

111. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, THE CORYN GROUP II, LLC, including its Trademark, AMR COLLECTION.

112. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, APPLE LEISURE GROUP.

113. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

114. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., including its Trademark, APPLE LEISURE GROUP.

115. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, CASABLANCA GLOBAL HOLDINGS, L.P., including its Trademark, APPLE LEISURE GROUP.

116. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, AMResorts, L.P.

117. That on or about June 9, 2022, defendant, HYATT HOTELS CORPORATION, directly or indirectly, owned defendant, DREAMS.

118. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, HYATT CORPORATION.

119. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, HYATT HOTELS CORPORATION.

120. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, THE CORYN GROUP II, LLC, including its Trademark, AMR COLLECTION.

121. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, APPLE LEISURE GROUP.

122. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

123. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., including its Trademark, APPLE LEISURE GROUP.

124. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, CASABLANCA GLOBAL HOLDINGS, L.P., including its Trademark, APPLE LEISURE GROUP.

125. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, AMResorts, L.P.

126. That on or about June 9, 2022, defendant, HYATT LATIN AMERICA, directly or indirectly, owned defendant, DREAMS.

127. That on or about June 9, 2022, defendant, THE CORYN GROUP II, LLC, its subsidiaries and affiliates, known under its Trademark, AMR COLLECTION, directly or indirectly, owned defendant, AMR COLLECTION.

128. That on or about June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, owned defendant, APPLE LEISURE GROUP.

129. That on or about June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

130. That on or about June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, owned defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

131. That on or about June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, owned defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

132. That on or about June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, owned defendant, AMResorts, L.P.

133. That on or about June 9, 2022, defendant, AMR COLLECTION, directly or indirectly, owned defendant, DREAMS.

134. That on or about June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, owned defendant, AMR COLLECTION.

135. That on or about June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

136. That on or about June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, owned defendant, AMResorts, L.P.

137. That on or about June 9, 2022, defendant, APPLE LEISURE GROUP, directly or indirectly, owned defendant, DREAMS.

138. That on or about June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, owned defendant, AMR COLLECTION.

139. That on or about June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, owned defendant, APPLE LEISURE GROUP.

140. That on or about June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, owned defendant, AMResorts, L.P.

141. That on or about June 9, 2022, defendant, ALG VACATIONS CORPORATION, directly or indirectly, owned defendant, DREAMS.

142. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, owned defendant, APPLE LEISURE GROUP.

143. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

144. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, owned defendant, THE CORYN GROUP II, LLC, including its Trademark, AMR COLLECTION.

145. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, owned defendant, AMResorts, L.P.

146. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, owned defendant, DREAMS.

147. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, owned defendant, APPLE LEISURE GROUP.

148. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, owned defendant, ALG VACATIONS CORPORATION.

149. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, owned defendant, THE CORYN GROUP II, LLC, including its Trademark, AMR COLLECTION.

150. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, owned defendant, AMResorts, L.P.

151. That on or about June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, owned defendant, DREAMS.

152. That on or about June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, owned defendant, AMR COLLECTION.

153. That on or about June 9, 2022, defendant, AMResorts, L.P., directly or indirectly, owned defendant, DREAMS.

154. That on or before June 9, 2022, defendant, HYATT HOTELS CORPORATION, was a subsidiary and/or affiliate of defendant, HYATT CORPORATION.

155. That on or before June 9, 2022, defendant, HYATT CORPORATION, was a subsidiary and/or affiliate of defendant, HYATT HOTELS CORPORATION.

156. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, was a subsidiary and/or affiliate of defendant, HYATT CORPORATION.

157. That on or before June 9, 2022, defendant, HYATT LATIN AMERICA, was a subsidiary and/or affiliate of defendant, HYATT HOTELS CORPORATION.

158. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

159. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

160. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

161. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or affiliate of defendant, AMR COLLECTION.

162. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

163. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

164. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

165. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

166. That on or before June 9, 2022, defendant, THE CORYN GROUP II, LLC, was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

167. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

168. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

169. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

170. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

171. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

172. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

173. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

174. That on or before June 9, 2022, defendant, AMR COLLECTION, was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

175. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

176. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

177. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

178. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, AMR COLLECTION.

179. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

180. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

181. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

182. That on or before June 9, 2022, defendant, APPLE LEISURE GROUP, was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

183. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

184. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

185. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

186. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, AMR COLLECTION.

187. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

188. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

189. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

190. That on or before June 9, 2022, defendant, ALG VACATIONS CORPORATION, was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

191. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

192. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

193. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

194. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

195. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

196. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, AMR COLLECTION.

197. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

198. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

199. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

200. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

201. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

202. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

203. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, AMR COLLECTION.

204. That on or before June 9, 2022, defendant, CASABLANCA GLOBAL HOLDINGS, L.P., was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

205. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

206. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

207. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

208. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

209. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

210. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, AMR COLLECTION.

211. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

212. That on or before June 9, 2022, defendant, AMResorts, L.P., was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

213. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, HYATT CORPORATION.

214. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, HYATT HOTELS CORPORATION.

215. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, HYATT LATIN AMERICA.

216. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, APPLE LEISURE GROUP.

217. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, ALG VACATIONS CORPORATION.

218. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, AMR COLLECTION.

219. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, AMResorts, L.P.

220. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P.

221. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, CASABLANCA GLOBAL HOLDINGS, L.P.

222. That on or before June 9, 2022, defendant, DREAMS, was a subsidiary and/or an affiliate of defendant, THE CORYN GROUP II, LLC.

223. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

224. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

225. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

226. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

227. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

228. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

229. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

230. That on or about June 9, 2022, the defendant, HYATT CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

231. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the

luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

232. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

233. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

234. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

235. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

236. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

237. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

238. That on or about June 9, 2022, the defendant, HYATT HOTELS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

239. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the

luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

240. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

241. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

242. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

243. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

244. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

245. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

246. That on or about June 9, 2022, the defendant, HYATT LATIN AMERICA, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

247. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort,

DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

248. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

249. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

250. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

251. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

252. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries,

affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

253. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

254. That on or about June 9, 2022, the defendant, AMR COLLECTION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

255. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

256. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

257. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

258. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

259. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

260. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

261. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

262. That on or about June 9, 2022, the defendant, APPLE LEISURE GROUP, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

263. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

264. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

265. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

266. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

267. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

268. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

269. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

270. That on or about June 9, 2022, the defendant, ALG VACATIONS CORPORATION, directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

271. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

272. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing

and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

273. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

274. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

275. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

276. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including

overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

277. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

278. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL INTERMEDIATE HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

279. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

280. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing

security for all hallways, hotel rooms, and common areas within the subject premises.

281. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

282. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

283. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

284. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing

security for all hallways, hotel rooms, and common areas within the subject premises.

285. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

286. That on or about June 9, 2022, the defendant, CASABLANCA GLOBAL HOLDINGS, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

287. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, was the owner of the luxury resort, DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

288. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, operated the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

289. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

290. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

291. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, inspected the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

292. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, supervised the luxury resort, DREAMS, including overseeing and/or providing security

for all hallways, hotel rooms, and common areas within the subject premises.

293. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

294. That on or about June 9, 2022, the defendant, AMResorts, L.P., directly or indirectly, or through its subsidiaries, affiliates and/or agents, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security to the patrons of DREAMS.

295. That on or about June 9, 2022, the defendant, DREAMS, operated the luxury resort, "DREAMS MACAO BEACH PUNTA CANA," including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

296. That on or about June 9, 2022, the defendant, DREAMS, maintained the luxury resort, "DREAMS MACAO BEACH PUNTA CANA," including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

297. That on or about June 9, 2022, the defendant, DREAMS, controlled the luxury resort, "DREAMS MACAO BEACH PUNTA CANA,"

including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

298. That on or about June 9, 2022, the defendant, DREAMS, inspected the luxury resort, "DREAMS MACAO BEACH PUNTA CANA," including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

299. That on or about June 9, 2022, the defendant, DREAMS, supervised the luxury resort, "DREAMS MACAO BEACH PUNTA CANA," including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

300. That on or about June 9, 2022, the defendant, DREAMS, managed the luxury resort, "DREAMS MACAO BEACH PUNTA CANA," including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

301. That on or about June 9, 2022, the defendant, DREAMS, was responsible for overseeing and/or providing security for the luxury resort, "DREAMS MACAO BEACH PUNTA CANA," including all security employees and equipment used to provide security to the patrons of DREAMS.

302. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries, and/or entities involved in the subject incident, was and still is the owner of the luxury resort,

DREAMS, located at Playa Macao Provincia La Altagracia Dominican Republic.

303. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, operated the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

304. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, maintained the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

305. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, controlled the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

306. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, inspected the luxury resort, DREAMS, including

overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

307. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, supervised the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

308. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, managed the luxury resort, DREAMS, including overseeing and/or providing security for all hallways, hotel rooms, and common areas within the subject premises.

309. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent corporations, subsidiaries and/or entities involved in the subject incident, was responsible for overseeing and/or providing security for the luxury resort, DREAMS, including all security employees and equipment used to provide security for the patrons of DREAMS.

310. That on or about June 9, 2022, the defendants, "ABC CORPORATION," fictitious names intended to represent

corporations, subsidiaries and/or entities involved in the subject incident, owned defendant, DREAMS MACAO BEACH PUNTA CANA.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
**NEGLIGENCE**

311. Plaintiffs repeat and reiterate each and every allegation state in paragraph "1" through "310" as if herein fully stated.

312. That on or about June 8, 2022, the plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, arrived at the luxury resort, DREAMS MACAO BEACH PUNTA CANA, Dominican Republic, with an anticipated departure date of June 14, 2022.

313. The plaintiffs traveled to DREAMS luxury resort for their son's wedding, which took place on June 11, 2022.

314. The plaintiffs were assigned to Room 1030 on June 8, 2022.

315. In the early morning hours of June 9, 2022, two (2) armed men entered the plaintiffs' room, while plaintiffs were sleeping.

316. The men were wearing face coverings and placed a flashlight and knife in plaintiff, DONNA CHRISTIE'S, face, awakening her. She screamed for fear of her life, awakening her husband, plaintiff, NICKOLAS CHRISTIE.

317. One of the perpetrators placed a knife at the throat of plaintiff, NICKOLAS CHRISTIE, demanding money ("dinero").

318. Moreover, one of the perpetrators also attempted to sexually abuse and violate plaintiff, DONNA CHRISTIE, grabbing her thigh.

319. Additionally, a physical altercation erupted between the plaintiff, NICKOLAS CHRISTIE, and the perpetrators.

320. Plaintiff, NICKOLAS CHRISTIE, was physically and violently assaulted and stabbed, sustaining serious and permanent injury.

321. That the plaintiff, DONNA CHRISTIE, was groped and grabbed in an inappropriate manner by the subject perpetrators.

322. That the altercation between the plaintiff, NICKOLAS CHRISTIE, and the perpetrators continued for a period of time, resulting in further physical injury and harm to the plaintiff.

323. That the perpetrators robbed money, personal property, jewelry and cash from the plaintiffs, including, but not limited to, cell phones, Rolex watch and approximately Three Thousand Dollars ($3,000) in cash.

324. That as a result of the foregoing, the plaintiffs feared for their life, believing that they were each going to be murdered.

325. That security had been called by other individuals, who heard the screams of the plaintiff, DONNA CHRISTIE.

326. That security did not arrive for approximately one-half (1/2) hour after the aforementioned attack and assault and robbery had occurred.

327. Thereafter, the plaintiffs would never return to their room (1030), opting to sleep with their daughter and brother-in-law in a single room (1101) for fear that the perpetrators would return.

328. That the plaintiffs left the facility on June 12, 2022, rather than their scheduled departure date of June 14, 2022.

329. Based upon information and belief, the subject perpetrators were on the property of defendant, DREAMS, for a substantial period of time prior to their assault, robbery and attack of the plaintiffs and, were not pursued and apprehended by security.

330. That the defendants knew or should have known that the subject perpetrators were on the subject property for a substantial amount of time, prior to their attack, robbery and assault of the plaintiffs.

331. That the defendants failed to provide proper security, preventing the perpetrators from entering the property of DREAMS and more specifically, the plaintiffs' room.

332. That the defendants failed to provide sufficient and adequate security to prevent the subject occurrence.

333. Despite the aforementioned occurrence and, the plaintiffs' staying in one (1) room with seven (7) people, until June 12, 2022, the defendants herein charged the plaintiffs for their entire pre-scheduled dates of June 8, 2022 through June 14, 2022.

334. Moreover, while leaving the subject premises on June 12, 2022, one of the security guards of the subject premises was found taking photographs of the plaintiffs, resulting in further anxiety, stress and fear for their lives.

335. That the aforementioned occurrence was directly or indirectly caused by the defendants, their agents, servants and/or employees, their subsidiaries and/or affiliates' carelessness, negligence and recklessness in owning, controlling, operating, maintaining and supervising the subject DREAMS luxury resort; that the aforementioned occurrence was a direct or indirect result of the defendants, their agents servants and/or employees, their subsidiaries and/or affiliates' failure to provide proper and adequate security; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to hire proper security personnel; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to provide proper security measures, including, but not limited to, proper fencing, property security cameras, sufficient number of security personnel; that the defendants, their agents, servants

and/or employees, subsidiaries and/or affiliates failed to properly train security personnel; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to properly recruit, hire and maintain proper security personnel; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to have sufficient number of security stations for the size of the luxury resort property; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to apprehend the perpetrators on the defendants' premises prior to their attack upon the plaintiffs; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to properly supervise and oversee the security team at the subject resort; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to properly monitor video cameras; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to hire sufficient number of personnel to walk and patrol the subject property; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to call the police in a timely fashion; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to respond to pleas for help; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed

to hire sufficient personnel to monitor and patrol the subject premises; that the defendants, their agents, servants and/or employees, subsidiaries and/or affiliates failed to properly investigate the subject perpetrators entering onto the DREAMS property prior to their attack, assault and robbery upon the plaintiffs.

336. Defendants are jointly and severally liable for all of plaintiff's damages, including, but not limited to, plaintiffs' non-economic loss, by reason of the fact that defendants owed plaintiffs a non-delegable duty of care.

337. Defendants are jointly and severally liable for all of plaintiffs' damages, including, but not limited to, plaintiffs' non-economic loss, by reason of the fact that said defendants are vicariously liable for the negligent acts and omissions of its servants, agents, and/or employees, their subsidiaries and affiliates.

338. Defendants are jointly and severally liable for all of plaintiffs' damages, including, but not limited to, plaintiffs' non-economic loss, by reason of the fact that said defendants acted with reckless disregard for the safety of others.

339. That the plaintiffs were free from any contributory negligence.

340. That as a result of the foregoing, the plaintiffs sustained physical injury, severe emotional trauma, anxiety,

fear, depression, sleeplessness, nightmares, abdominal pain, physical pain, stress, lost earnings, psychological and emotional injury, and other pecuniary loss, including, but not limited to, cash, cell phones and jewelry.

341. That as a result of the foregoing, the plaintiff, NICKOLAS CHRISTIE, was seriously and permanently injured.

342. That as a result of the foregoing, the plaintiff, DONNA CHRISTIE, was seriously and permanently injured.

343. That by reason of the foregoing, plaintiff, NICKOLAS CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

344. That by reason of the foregoing, plaintiff, DONNA CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

345. Plaintiffs repeat and reiterate each and every allegation state in paragraph "1" through "344" as if herein fully stated.

346. That the negligence of the defendants described herein resulted in each plaintiff suffering severe emotional distress and

anxiety, fear, nightmares, abdominal pain, sleeplessness, and other physical manifestations of their emotional distress.

347. That said occurrence and resulting injuries to plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, occurred without any fault or wrongdoing on the part of the plaintiffs contributing thereto.

348. That as a result of the foregoing, the plaintiff, NICKOLAS CHRISTIE, was seriously and permanently injured.

349. That as a result of the foregoing, the plaintiff, DONNA CHRISTIE, was seriously and permanently injured.

350. That by reason of the foregoing, plaintiff, NICKOLAS CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

351. That by reason of the foregoing, plaintiff, DONNA CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
**GROSS NEGLIGENCE**

352. Plaintiffs repeat and reiterate each and every allegation state in paragraph "1" through "351" as if herein fully stated.

353. That the defendants herein were fully aware of prior security breaches, attacks and/or robberies, on the subject premises known as "DREAMS" and failed to take proper measures to prevent future occurrences and failed to correct these security issues.

354. That the defendants herein knew about the presence of the perpetrators on their property on the date of incident and intentionally and deliberately failed to attempt to pursue and apprehend these perpetrators before their attack and robbery of the plaintiffs.

355. That the defendants herein were grossly negligent in failing to prevent the subject security breach and attack and robbery on the plaintiffs herein.

356. That the defendants herein intentionally and deliberately failed to attempt to apprehend and purse the perpetrators, who were present on their property, for at least three (3) hours before their attack and robbery on the plaintiffs herein.

357. That the aforementioned occurrence was a direct result of the deliberate and intentional acts of the defendants, their agents, servants and/or employees.

358. That as a result of the defendants' intentional and deliberate acts and/or wanton and gross negligence, the plaintiffs sustained serious and permanent physical and emotional injuries,

including, but not limited to, pain and suffering, emotional distress, anxiety, fear, sleeplessness, abdominal pain, stress, depression, nightmares, emotional trauma, financial and pecuniary loss.

359. That said occurrence and resulting injuries to plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, occurred without any fault or wrongdoing on the part of the plaintiffs contributing thereto.

360. That as a result of the foregoing, the plaintiff, NICKOLAS CHRISTIE, was seriously and permanently injured.

361. That as a result of the foregoing, the plaintiff, DONNA CHRISTIE, was seriously and permanently injured.

362. That by reason of the foregoing, plaintiff, NICKOLAS CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest and punitive damages.

363. That by reason of the foregoing, plaintiff, DONNA CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest and punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
**ZONE OF DANGER**

364. Plaintiffs repeat and reiterate each and every allegation state in paragraph "1" through "363" as if herein fully stated.

365. That on or about June 9, 2022, plaintiff, DONNA CHRISTIE, observed her husband, plaintiff, NICKOLAS CHRISTIE, sustain serious and permanent injuries, caused as a result of the aforementioned assault and robbery.

366. That the plaintiff, DONNA CHRISTIE, was in the zone of danger at the time that her husband, plaintiff, NICKOLAS CHRISTIE, was involved in the subject assault and robbery.

367. That on or about June 9, 2022, plaintiff, NICKOLAS CHRISTIE, observed his wife, plaintiff, DONNA CHRISTIE, sustain serious and permanent injuries, caused as a result of the aforementioned assault and robbery.

368. That the plaintiff, NICKOLAS CHRISTIE, was in the zone of danger at the time that his wife was involved in the subject assault and robbery.

369. That as a result of the foregoing, the plaintiffs sustained serious emotional trauma and emotional distress, anxiety and depression.

370. That by reason of the foregoing, plaintiff, NICKOLAS CHRISTIE, was damaged in the amount of Five Million

($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

371. That by reason of the foregoing, plaintiff, DONNA CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
**LOSS OF CONSORTIUM**

372. Plaintiffs repeat and reiterate each and every allegation state in paragraph "1" through "371" as if herein fully stated.

373. That the plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, were and still are husband and wife.

374. That as a result of the above mentioned, plaintiffs, NICKOLAS CHRISTIE and DONNA CHRISTIE, were caused to be deprived of each other's society, companionship, consortium and financial support.

375. That by reason of the foregoing, plaintiff, NICKOLAS CHRISTIE, was damaged in the amount of Five Million ($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

376. That by reason of the foregoing, plaintiff, DONNA CHRISTIE, was damaged in the amount of Five Million

($5,000,000.00) Dollars plus costs, disbursements, attorney's fees, and interest.

WHEREFORE, plaintiffs demand judgment as follows:

On the First Cause of Action, compensatory damages, jointly and severally against all of the defendants, in the sum of Five Million ($5,000,000.00) Dollars for plaintiff, NICKOLAS CHRISTIE, and Five Million ($5,000,000.00) Dollars for plaintiff, DONNA CHRISTIE, plus punitive damages, costs, disbursements and attorney's fees and interest.

On the Second Cause of Action, compensatory damages, jointly and severally against all of the defendants, in the sum of Five Million ($5,000,000.00) Dollars for plaintiff, NICKOLAS CHRISTIE, and Five Million ($5,000,000.00) Dollars for plaintiff, DONNA CHRISTIE, plus punitive damages, costs, disbursements and attorney's fees and interest.

On the Third Cause of Action, compensatory damages, jointly and severally against all of the defendants, in the sum of Five Million ($5,000,000.00) Dollars for plaintiff, NICKOLAS CHRISTIE, and Five Million ($5,000,000.00) Dollars for plaintiff, DONNA CHRISTIE, plus punitive damages, costs, disbursements and attorney's fees and interest.

On the Fourth Cause of Action, compensatory damages, jointly and severally against all of the defendants, in the sum of Five Million ($5,000,000.00) Dollars for plaintiff, NICKOLAS CHRISTIE,

and Five Million ($5,000,000.00) Dollars for plaintiff, DONNA CHRISTIE, plus punitive damages, costs, disbursements and attorney's fees and interest.

On the Fifth Cause of Action, compensatory damages, jointly and severally against all of the defendants, in the sum of Five Million ($5,000,000.00) Dollars for plaintiff, NICKOLAS CHRISTIE, and Five Million ($5,000,000.00) Dollars for plaintiff, DONNA CHRISTIE, plus punitive damages, costs, disbursements and attorney's fees and interest.

**JURY DEMAND**

Demand is hereby made for a trial by jury on all issues.

Dated: Staten Island, New York
May 30, 2024

Yours, etc.

NICHOLAS MARTINO, JR. (NM-4118)
Attorney for Plaintiffs
7448 Amboy Road
Staten Island, New York 10307
(718) 605-7360